Good morning, your honors. Ken Miller on behalf of James Trumbauer. The issue that I would like to address is the second issue raised in the opening brief, which is whether or not the district court abused its discretion in admitting the testimony of Patrick Matsuda on rebuttal. And I think that the first place to start is that the decision was an exercise of discretion, and the district court misunderstood the facts when it purported to exercise its discretion. Therefore, it abused that discretion. Prior to trial, the court had clearly told the prosecutor that she was not precluded from using this evidence in her case-in-chief. That's an excerpt of Record 70, 79, and 80. And then when the court eventually did let in Patrick Matsuda's testimony on rebuttal, it clearly stated its belief that it had previously precluded the admission of this evidence from the government's case-in-chief, and therefore relied on that fact to admit it in rebuttal. It said it repeatedly that it had told the prosecutor she couldn't use it, and that's why he was going to allow her to use it in rebuttal. Mr. Trumbauer was clearly prejudiced by this abuse of discretion. Mr. Matsuda's testimony was very, very damaging to his case. We went from a city to a district court misunderstood the facts when it purported that the district court made here. Your Honor, the district court said, and the prosecutor argued, Your Honor, you told me prior to trial that I couldn't use this evidence until we got to rebuttal. You excluded it from my case-in-chief. And so when we got to the government's rebuttal case, the prosecutor said, Your Honor, I'd like to get this in now. You told me I couldn't use it earlier. And I pointed out to the court at that point that that was not my recollection of what had happened. And the court repeatedly said, No, I think that the prosecutor is right. I think that I did preclude her from getting into this evidence in her case-in-chief, and therefore he relied on that fact in allowing it to come in in rebuttal. So your claim is that when the district court initially excluded Matsuda's testimony, that what the district court intended was that Matsuda's testimony should not come in at any time. If it's excluded from the case-in-chief, it No, Your Honor. Actually, what he had said is, I can't tell you that this is excluded from the case-in-chief. I can't tell you that it's included. We're just going to have to see. The very nature of the facts in this case may be such that counsel's opening statement opens the door to this evidence coming in, or the evidence itself may cry out. Even before opening statement, the evidence in this case itself may cry out for a need to fill some holes with 404B evidence. And that's almost exactly what the district court said. But if the error that you're complaining of here, that is the district court misunderstood the facts, and that misunderstanding constitutes an abuse of discretion, that is the mistake that you've represented to us is a mistake as to what the district court thought it had said about Matsuda. Now, how can we judge that as an error if the district court is in full control of whether Mr. Matsuda's testimony comes in at any time during this trial, whether it's during the government's case-in-chief or during its rebuttal? In other words, and what are we to do if we think that the district court changed its mind? The district court didn't. It's clear from the record, from the excerpt of record, that the district court initially said, I can't exclude this from your case-in-chief, and that the district court at a later time said, I had excluded that from your case-in-chief, and I'm relying on that fact to allow you to get this evidence in, in rebuttal. It relied on its earlier misstatement to allow it to, to this evidence to come in rebuttal. And at this time, the court was balancing the equities. It was exercising its discretion. My position then and my position now was that we hadn't opened any doors. We didn't put in on anything in our case that would have allowed for this rebuttal. So the judge is balancing that, and he's saying, well, you knew that the government wanted to offer Patrick Matsuda, and you knew that I'd precluded the government from offering Patrick Matsuda, so when I balance this all out, I'm going to exercise my discretion and let this in. And the reason that was so key was because I had foregone a witness in my case-in-chief named Dolores Shellhammer, who would have, would have been very good for the defense case, but would have clearly opened the door to the rebuttal that the government sought. Because the government did not seek Matsuda's testimony in its case-in-chief, I decided not to call that witness. Me and my client decided we weren't going to call that witness because we didn't want to open the door to that type of rebuttal. Okay. I want to make sure I understand your position. Yes. Shellhammer was an alibi witness. Shellhammer was going to come in and say, I was there during a phone conversation. Mr. Trumbauer was going to make arrangements to go give somebody a ride to a job interview. Alibi witness? I mean, okay. I mean, she was going to offer an explanation as to where he was during the events in question. And he was, she was also going to undercut some inferences from Agent Mana's testimony of what had happened on the 25th. She was going to be very good. But Mr. Matsuda was going to testify to prior drug contact. Correct. That doesn't have anything to do with the time period at issue here. I fail to see what the connection is between Ms. Shellhammer's testimony and Mr. Matsuda's testimony. The connection is, Ms. Shellhammer, had she testified, would have cleared when she said that James Trumbauer was told the night before that he was going to that his friend, James Bilella, or James, needed a ride down to Orange County to a place where they had these horse shows and they put on these things. Once she testified, that was going to lay the foundation for innocent presence or mistake, that Trumbauer was down there for an innocent purpose. And then the government could come in under 404B and say, we are offering Patrick Matsuda's testimony to rebut the evidence of mistake, of a mistaken situation. You're claiming mere presence. We want to put on Matsuda to say this wasn't any mere presence. You're a drug dealer and that's what you were doing down there. Had I put on Dolores Shellhammer, I believe and I think reasonably that Patrick Matsuda's testimony would have come in and that I wouldn't be in a position to argue about it now. So I kept out Dolores Shellhammer. And so then what the district court did by relying on its earlier, by relying on a mistake, was change the rules of the game midstream. Change, and I apologize for calling it a game, but there are rules. The government puts on its case. I address that. And then whatever I raise, they get to put on in rebuttal. By allowing the government to call somebody from their case in chief in rebuttal, they completely changed the mix of what was going on, of how we were preparing for trial. That's why after the court did that, or how we were conducting the trial, that is why after the court did that I said, okay, Your Honor, but now I would like to get in Dolores Shellhammer and here is why. And I laid out the reasons then pretty close to the way that I've laid them out now. But wasn't your choice not to call Shellhammer a strategic choice at the beginning? You could have called her. I could have. I could have.  And the state of the evidence was Matsuda was not going to be coming in. The government had chosen not to call Matsuda in its case in chief. So your argument is really not a 403B balancing argument. It's a misdirection by the judge who is trying the case. Yes, Your Honor. I've raised them all. But the one that I think is the strongest is the fact that if a court exercises its discretion on a mistake of material fact, and this was material fact, then that court necessarily abused that discretion. We were injured in two ways. One, Patrick Matsuda's testa came in, testimony came in, and that was injurious. And the other way was Dolores Shellhammer, we lost the opportunity to use her. Why couldn't you have brought Dolores Shellhammer's testimony in at that point? Because this is another wrinkle in the entire trial, Your Honor, and that is in order to call Dolores Shellhammer, we would have actually had to mistry the case. She had suffered an aneurysm two months prior to trial. So I could have called her in. I tried to call her in rebuttal, and I couldn't because that would have necessitated a mistrial. By that point, the district court is saying, if you'd wanted to call her in your case in chief, I would have mistried this case for you to call her. You want to call her this late in the game? No, I'm not going to, is essentially what happened. So you did ask to have Shellhammer's testimony introduced in. You effectively did ask for the mistrial after Matsuda's testimony came in. Oh, yes, I did. Absolutely. But I did that after Matsuda's testimony. And I see that I'm short of time. I'd like to reserve the balance unless there's any questions. Good morning, Your Honors. May it please the Court. My name is Wynne Huang. I represent the United States of America. Your Honors, I'd first like to correct some of the things that Mr. Miller had stated. First off, with respect to the record, in the December 8th hearing, the pretrial hearing where Matsuda's testimony was extensively discussed, the Court discussed, and also the parties discussed, bringing that testimony in on rebuttal. The Court ruled, ultimately, after an extensive discussion, and this is in Government's Excerpts of Record 114, and it's page 52 of the transcript in December 8th, that, I quote, Well, I don't think that I can grant the motion that says you can use it because the Court doesn't know how the facts would come out. But I don't think I can grant a motion saying you can't use it. So in essence, at that stage, the Court was waiting to see what evidence comes about during the trial to determine whether or not Matsuda's testimony can come in. So your point is that there was no ruling by the Court early on that Matsuda could be available for a rebuttal witness? Your Honor, let me state it this way. That there was extensive discussion that this could and probably would come in on rebuttal, and that the nature of this case was that it was unavoidable that the defendant had to make an argument that there was mistake. It was a mistaken situation, mistaken identity. But the Court wanted to wait until the defense opened the door. And so the Court exercised its discretion and said, let's see. How did the defendant open the door? The defendant opened the door by arguing. It was an argument by implication. First off, one of the witnesses, Heidi Wernz, was an investigator. She had testified. Mr. Trumbauer was first spotted by an agent pulling a baggie out of the bushes, went thug in a brand-new Chevy truck with paper plates. Now, the defense investigator testified that he was. Was he identified as Trumbauer? He resembled Mr. Trumbauer highly, and also Mr. Trumbauer was arrested in a brand-new Chevy truck with paper plates. When we say he, Mr. Trumbauer was seen, it's really unclear. He was not arrested at the time. There was no photograph. There was no clear identification on the stand. There were no license plates to say, you know, the truck had these license plates with one defendant. So it's a little bit of a wrong statement to say that. There was some evidence somebody that looked like defendant pulled something out of the truck. Yes, Your Honor. That was the state of the evidence. Yes. Someone looked like the defendant driving up in a brand-new Chevy truck with paper plates. Do you understand the difference between saying that is what the evidence presents and saying Trumbauer was seen doing this? Do you understand the difference between that? Yes, Your Honor. I stand corrected. Thank you. It's a little bit more than standing corrected. It is articulating the record accurately. Okay? This is not a jury here. You're not involved in an argument. You are to discuss the record and the evidence as presented. You understand that? Yes, Your Honor. Very clear. Okay. Back to what we were discussing, Your Honor, that Mr. Trumbauer was indeed arrested in a brand-new Chevy truck with paper plates, and the defense investigator testified that there were many, about eight car dealerships around that area, and that she had gone to where the defendant was arrested and parked there, and she could not see down Azalea Street, which is a straight-shot view to Wild Hills. So by implication, the defense was arguing that Mr. Trumbauer was there for a purpose other than drug dealing, for an innocent purpose, that it was a mistake. I'm sorry. Whose testimony was this? This was Heidi Wernst. And that's the defense witness? Yes. And she testified. And how exactly did this open the door? The implication was that Mr. Trumbauer was there not for the purpose of drug dealing, that he was there for an innocent purpose, and that he was – there was a case of mistaken identity. Well, mistaken identity would be very different from being there for an innocent purpose. If somebody said, I saw President Bush there, and you were mistaken about that, it would be very different from saying he wasn't there. It's all interwoven, mistaken situation, mistaken circumstance, mistaken identity. And the Court after – the Court actually did extensive research at the time that it was trying to determine whether or not Matsuda's testimony would come in. And the Court read through a number of cases and said that in this category, mistake is very broad. It's never been specified. But in this case, a lot of different types of mistake were evident, mistaken identity, mistaken circumstance. And that's one of the reasons why the Court allowed Matsuda's testimony in there. Did the district court say what opposing counsel suggested, that it believed it had precluded Matsuda's testimony in direct? This is my understanding from reading the transcript. There was extensive discussion. Do you have the transcript? I have a record here. Maybe we can read it together. Yes, Your Honor. We do. I do have the transcript. Okay. What page is it on? Your Honor, if I may have a second. Time's up. You should ask for more than a second. Will do, Your Honor. The discussion actually goes on at length from Government's Excerpt of Record 99 all the way through Government's Excerpt of Record 114. Essentially what the Court ---- Yes. And this is in Volume I of the Government's Excerpt of Record. Yes, 99 to 114. Okay. That is a lot of territory. In essence, what the district court was thinking at the time throughout this extensive discussion was that ---- Now, this is the ---- this is the discussion at the time of the rebuttal case, right? No, Your Honor. This is actually pretrial, December 8th. Well, that's a different question than I asked you. The question is, counsel represented that at later on when the rebuttal evidence was proffered, the district court was under the misimpression or stated that he thought he had precluded Matsuda's testimony on direct and so made his judgment as to its admissibility by saying they didn't get a chance to admit him direct. Is that a fair characterization of what the district court said? No, it's not, Your Honor. The court in the December 8th hearing was ---- what's on its mind in terms of the discussion was I'm going to try to be cautious here, I'm going to basically imply greatly or assume greatly that if anything we're going to be cautious and it comes in on rebuttal. And the court was uncertain at the time, but basically the court had stated subsequently as it had stated there that the court was trying to be cautious. And in ---- We're talking now at the time of the rebuttal evidence was proffered. Yes, Your Honor, at that time and also at the December 8th hearing. I'm asking you about the time the evidence was proffered. Counsel said the district court said Matsuda's testimony was excluded on direct, okay? It's the only question I'm asking you. I don't want to hear about anything else. Did the district court say that? Did the district court say Matsuda's testimony was excluded on direct? No. The district court never specifically stated that the testimony was precluded on direct. Had been precluded on direct. Exactly, Your Honor. There was no direct statement saying that it's precluded on direct. There was the implication that the court was going to be cautious and if the government were to admit it, that rebuttal would be the better time to admit it. I don't think you're understanding my question. I'm talking about the time that the rebuttal evidence was proffered, okay? Did the district court say I have excluded this testimony on direct? At that time, I don't want to hear what the district court said earlier or the thought earlier. Do you understand the question? Yes, Your Honor. Okay. This is the third time. What's the answer to my question? The answer was the court said I believe I was in error or something to that effect by being cautious, by telling the government that it would be best to get it in rebuttal, something to that effect, according to my recollection. Do you have a transcript? Yes, I do have it, Your Honor. Is that at the 99 to 114, or is that a different part of the transcript? That is definitely a different part of the transcript, Your Honor. Okay. 99 to 114 is the pretrial hearing. That part was right before admission of Matsuda's testimony. And do you know where that is? Yes, Your Honor, if I can have the ---- Can I share? Yes, Your Honor. Okay. This is in, just to give the Court a heads-up, it's in Volume 4. Okay. I have Volume 4. Okay. I see one aspect where the district court does talk about it, and it's Government's Excerpt of Record 915. Okay. Line? 915, and it's line ---- I believe it's the paragraph beginning on line 5. The ruling of the Court earlier on the motion in limine to delay the matter until after the defendant's case, in the sentence put in issue, I think was probably correct, but I had ---- I have a feeling after reviewing the case, these cases, that had the Court ruled the other way and said that it could be admissible in part as part of the Government's case in chief. I don't think that would have been an error. I think that would have been a correct ruling under the statute. So the Court seems to be under the impression that it had excluded the testimony. Do you think that's a fair reading of what the judge is saying there? I can only read the next line, which is, it says, I think the Court in an abundance of caution made the ruling that it did. And I think it's doubly at issue as a result of the defense evidence presented in various ways throughout the course of the case. So I believe that the Court was probably under the impression that it directed the Government that if the evidence were to come in, that it would come in on rebuttal. In fact, that is not what the Government ---- what the Court had ruled. Excuse me, Your Honor? In fact, that's not what the Court had ruled. The Government left up ---- the Court had left it up to the Government. Your Honor, if this is not as equivocal as your response, please let me know. But in terms of the discussion, it was a very long discussion where they discussed at length the evidence coming in on rebuttal. And at the end, the Court ruled, I, you know, I'm not saying that it can't come in. I'm not saying that it can come in. I'm saying let's wait and see. Is that a yes or a no? Excuse me? Is that a yes or a no? Was it the District Court's rule that the evidence couldn't come in due to the Government's case in chief? No. Okay. And here at the end, the Court seems to be under the impression that it did. Yes? A slight impression, Your Honor. Is that by being a little bit of a whore? I mean, I understand. Your Honor, I ---- So it made its ruling after that misapprehension rebuttal under this misapprehension about what the Government could have done or could not have done on the right. Something we have to weigh in deciding whether its exercise of discretion was an abuse, right? Now, let's talk about 404B. How is this appropriate 404B evidence anyway? I believe it's appropriate 404B evidence because it certainly addresses a number of factors indicated in 404B. Okay, like what? Absence of mistake, identity. How does it indicate absence of mistake? That this wasn't a mistaken arrest. It wasn't ---- He wasn't mistakenly. How? How? How does this evidence make it less likely that this was a mistaken arrest? That Mr. Trumbauer was in that small vicinity, and he denies being involved in drug dealing. However, in the past, he had dealt in ecstasy tablets in thousand pill quantities before. So he's been a drug dealer before, and therefore, it's more likely that he is a drug dealer again. So when he says, I was just there picking my teeth, or I wasn't there at all, we tend to disbelieve him because he has done the crime before. Is that the inference? The inference is that he knows how drugs ---- Is that the inference? That's part of the inference, Your Honor.  So that's part of the inference. Okay. So part of the inference is he's done the crime before. Therefore, he is likely to have done it again. Isn't this precisely the kind of inference that 404b precludes? It precludes it if it's not probative, Your Honor. In this case, we had a strong circumstantial evidence. What do you mean probative? It's always probative. The very reason we exclude it is because juries very well understand that if you've done crimes in the past, you're likely to do them again. It is highly probative. It's also highly damaging. It's also exactly what the rule says. We cannot ---- we cannot ---- may not be admitted. Is there any relevance other than the fact that if he did the crime before, he's likely to have done it again? Well, let me say it this way, Your Honor. There's some very specific indications that it was ---- that there's a strong inference of identity here. That in this case, it becomes prominent that he deals at his home in Laurel Canyon. Previously, Matsuda testified that he had dealt drugs at his home in thousand pill quantities, dealing in ecstasy. So there's a strong inference of identity here. There's simply not just conformity. I'm sorry. What is that identity? That he dealt out of his home, meaning he didn't have a storefront or something that he was dealing from? Yes, Your Honor, and it's the same home. It's ---- there's strong similarity. There's also, if you will ---- How ---- I guess I'm ---- is that relevant? Is the fact that he dealt out of his home as opposed to dealt from somewhere else relevant to a issue in the case? I think that there's some indication of modus operandi, that there's the same modus operandi that he uses before and that he uses it again, and also that he's just simply not there for an innocent purpose. I would say that there's other strong evidence indicating that it wasn't sheerly coincidental that he was there. For instance, you have the driving instructions that match exactly where his house is. You have Bailela saying that my source is down by wild bills. You have him calling Bailela five times during the period of the drug deal, and you have ---- This is interesting, but what does that have to do with the 404B evidence, which is what we're discussing? The fact that there was other evidence is probably indicative that maybe you shouldn't have relied on this 404 stuff because maybe you'd create yourself unnecessary problems. But what I'm trying to understand is, is there some way in which this prior dealing evidence is relevant other than the specifically impermissible way of propensity evidence? Yes, Your Honor. It basically 404B allows evidence to come in to address specific factors, namely absence of mistake and identity. In here, there's a claim that you've got the wrong person. You've got the wrong situation. You don't have the wrong person because this guy's a criminal. And, you know, we all know that criminals do it again, and therefore the chances that he was there, that it was a mistake, are less because he's a criminal. He's done time before. Isn't that exactly the way in which 404B is meant not to operate? Well, the inferences in here, it works in conjunction with the evidence. The evidence establishes that he's there. There's a lot of things that are not coincidental, and you add this into it so that it's not coincidental. Right. And what you add into it is the additional inference is he's committed a crime before, and therefore take all this evidence that might be coincidental and it ties it all up. How does it tie it up? Well, the guy who committed the crime before probably did it again. Is there some other way in which it connects it? Usually the case involves somebody who, let's say, cooks methamphetamine and says, gee, I thought I was brewing tea. And, you know, I don't know, and the government comes in and says, well, but you were convicted of cooking methamphetamine before, so therefore when you say you were brewing tea, you really knew what amphetamine looked like. So that is evidence that you had knowledge of this particular aspect of the crime. Or we have cases where the guy used terms of art or used drug lingo, and he says, well, I don't know why. When we talk about ice, I thought we were really talking about going to the store and buying a bag of ice. And the government comes in and says, no, look, you were convicted of selling, I guess, whatever it was, ice, methamphetamine, before, and therefore you know what the street lingo is. But here it's nothing but you did the crime before, and therefore because you're a criminal in the past, you must, you know, all these things you claim are coincidences really wind up being not coincidences at all, because having done it in the past, you're likely to have done it again. That's the only inference I can see. But, Your Honor, with all due respect, I don't believe 404b says that all propensity evidence is precluded. It basically carves out certain instances where propensity evidence comes in, and it's a rule of conclusion. You concede it's propensity evidence, and now we're dickering about whether or not this is the wrong kind of propensity evidence. Am I understanding your position correctly? This is propensity evidence. Well, it's one purpose of it, yes. Okay. Counsel, you did not argue, or at least you haven't, that I've heard so far that perhaps this was admissible as material with respect to knowledge and intent on the conspiracy charge. Is that another argument that could be made here? Yes, Your Honor, it is another argument, and it indeed is a material element or a number of material elements that the government has to prove to prove the crime and get the conviction. And how does that prove it? Knowledge is that he knows how a drug deal is conducted. He knows that the source stays far from the broker and the broker sells the drugs while the source roves around and isn't identified that way. And was that testified to? Yes. That, in essence, Manna, who's one of the agents, testified that in drug transactions, in fact, the broker does the deal and the source stays out of the way so as to avoid detection and so the fact that the buyer cannot go. No, no. Was this profit that he knows how to do it? Was this argued to the jury? Was this profit at the time of trial? Or is this just something that you've still come up with now? I don't believe that it was part of the transcript, Your Honor. But you're happy to adopt it? Yes, Your Honor. Okay. Thank you. Thank you, Your Honor. Your Honors, unless there's any specific question, I would submit. Okay. Thank you. No specific question, no general question. The case is now used to answer minutes.
judges: Kozinski, O'scannlain, Bybee